**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARIJAAT DIXIT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SMART DIGITAL GROUP LIMITED, YUNTING CHEN, QIONGSHAN HUANG, SAM WAI HONG, ENROME LLP, US TIGER SECURITIES, INC., and JOHN DOES 1-100,<br><br>Defendants. | **CASE No. 1:26-cv-00296-NRB**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PAUL HOOLEY TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br>**CLASS ACTION** |

1

**Table of Contents**

INTRODUCTION AND BACKGROUND ................................................................................. 3

ARGUMENT ................................................................................................................................ 6

    I.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF ............................................ 6

        A.    Movant Is Willing to Serve as Class Representative ......................................................... 6

        B.    Movant Has the Largest Financial Interest in the Action ................................................. 7

        C.    Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure 7

        D.    Movant Is Presumptively the Most Adequate Plaintiff ..................................................... 9

    II.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................... 9

CONCLUSION ........................................................................................................................... 10

Paul Hooley ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the securities of Smart Digital Group Limited ("SDM" or the "Company") between May 5, 2025, and September 26, 2025 at 9:34 AM ET, both dates inclusive (the "Class Period"); and

(b)    approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

On January 13, 2026, this action was commenced against SDM, Yunting Chen, Qiongshan Huang, Sam Wai Hong, Enrome LLP, US Tiger Securities, Inc., and John Does 1-100 (collectively, "Defendants"). That same day, an early notice was issued pursuant to the PSLRA advising class members of, among other things, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto.

SDM conducts its purported business operations in Singapore, Macau, and China, through three operating entities. These purportedly provide a broad range of services including: (1) event planning and execution services, which consist of drafting event planning proposals, customizing event marketing strategies, engaging event sponsors and other related services; (2) internet media services, which include developing marketing strategies, designing marketing content, distributing such marketing content on select internet platforms and other related services; (3) software customization and marketing services which enable customers to formulate and implement marketing activities through proprietary software; and (4) business planning and consulting

services, which include business development planning, business data analysis, and other related services.

This case arises from the sudden collapse of SDM's stock price on September 26, 2025, and the still-pending halt of trading in the Company's securities due to a fraudulent market manipulation scheme that caused the Company's stock price to trade as high $29.40 per share intraday on July 28, 2025, despite no fundamental news to justify such a spike in the Company's stock price. Investigation and public reports have revealed that SDM was a vehicle utilized in a market manipulation and "pump-and-dump" promotional scheme. Impersonators acting as financial advisors touted SDM in online forums, chat groups, and social media posts with baseless claims to create a buying frenzy amongst retail investors.

According to the complaint, throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) SDM was the subject of a market manipulation and fraudulent promotion scheme involving social-media based misinformation and impersonators posing as financial professionals; (2) SDM was the subject of a market manipulation and fraudulent promotion scheme involving social-media based misinformation and impersonators posing as financial professionals; (3) SDM's public statements and risk disclosures omitted any mention of realized risk of fraudulent trading or market manipulation used to drive the Company's stock price; (4) as a result, SDM securities were at unique risk of a sustained suspension in trading by either or both of the SEC and NASDAQ; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations and prospects were materially misleading and/or lacked a reasonable basis.

Then, within minutes of the market opening on September 26, 2025 and the publication of a press release regarding the Company's cryptocurrency plan, the Company's stock price began to climb and volume in the Company's stock spiked with over 270,000 orders at 9:33 AM alone. This

4

volume of activity amounted to approximately 30% of the Company's average daily trading volume in a single minute. In response, NASDAQ temporarily halted trading in the Company's stock at 9:34 AM due to volatility. NASDAQ permitted trading to resume at 10:49 AM. After the resumption of trading, the stock manipulation scheme was exposed as SDM's stock price collapsed with investors suffering heavy losses. SDM's stock price resumed trading initially at just $2.27 per share before eventually closing at $1.85 per share on record daily trading volume of 25.9M. On the crash, SDM's stock price lost 88% of its value from its prior day closing price of $13.61.

The truth was further revealed after the market's close on September 26, 2025, when the SEC announced "the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934, of trading in the securities of Smart Digital Group Limited[.]" The SEC explained that the temporary suspension was due to "potential manipulation in the securities of SDM effectuated through recommendations made to investors by unknown persons via social media to purchase the securities of SDM, which appear to be designed to artificially inflate the price and volume of the securities of SDM." The suspension of trading in SDM was ordered for the period from 4:00 AM ET on September 29, 2025 through 11:59 PM ET on October 10, 2025.

On October 8, 2025, SDM filed on Form 6-K with the SEC a Report of Foreign Private Issuer finally acknowledging the suspension. The truth continued to emerge on October 11, 2025, when the NASDAQ announced that trading in SDM would remain suspended pending receipt of "additional information requested from the company." Despite the Company's denial of involvement in market manipulation and statement that it intends to "fully cooperate with both the SEC and Nasdaq[,]" trading in the Company's stock remains halted by the NASDAQ pending the information request, which was first issued on September 30, 2025. On October 24, 2025, SDM filed on Form 6-K with the SEC a Report of Foreign Private Issuer which stated, in pertinent part, that Defendant Huang, the Company's CFO, resigned.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. SDM stock remains halted from trading through the date of this filing.

**ARGUMENT**

## I.  MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice …;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A.  Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

**B. Movant Has the Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $214,154 in connection with purchases of SDM securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in SDM securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> the class is so numerous that joinder of all members is impracticable, (2) there are
> questions of law or fact common to the class, (3) the claims or defenses of the

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1.    Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiffs' claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiffs' claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading and failing to disclose material statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.    Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from his investments in SDM securities and is therefore extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

Further, movant is a Community Psychiatric Nurse with several years of investing experience and lives in Australia.

## II.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with

Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching Movant's and the Class's claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the country. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: March 16, 2026

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

11

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the word count limit set forth in Local Civil Rule 7.1(c). According to the word count feature of the word-processing system used to prepare this brief, the document contains 2,384 words.

/s/Phillip Kim

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim

13