**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PARIJAAT DIXIT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SMART DIGITAL GROUP LIMITED, YUNTING CHEN, QIONGSHAN HUANG, SAM WAI HONG, ENROME LLP, US TIGER SECURITIES, INC., and JOHN DOES 1-100,<br><br>Defendants. | Case No: 1:26-cv-00296-NRB |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF VITO VERGERIO FOR APPOINTMENT AS**
**LEAD PLAINTIFF AND APPROVAL OF CO-LEAD COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 2

ARGUMENT ................................................................................................................................ 3

I.      VERGERIO SHOULD BE APPOINTED LEAD PLAINTIFF ........................................ 3

        A.      Vergerio Filed a Timely Motion ............................................................................. 4

        B.      Vergerio Has the Largest, or Materially Equivalent, Financial Interest ................. 5

        C.      Vergerio Satisfies the Requirements of Rule 23 ...................................................... 7

II.     VERGERIO'S SELECTION OF CO-LEAD COUNSEL SHOULD BE APPROVED .... 8

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Constance Sczesny Tr. v. KPMG* LLP,
  223 F.R.D. 319 (S.D.N.Y. 2004) .................................................................................................8

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
  2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) .............................................................................7

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006)........................................................................................6

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................................5

*Peters v. Jinkosolar Holding Co., Ltd.*,
  2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ..............................................................................5

*In re Pfizer Inc. Sec. Litig.*,
  233 F.R.D. 334 (S.D.N.Y. 2005) ................................................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................................................1

*Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*,
  2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)............................................................................6

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ................................................................................................5

*Taft v. Ackermans*,
  2003 WL 402789 (S.D.N.Y. Feb. 20, 2003)..............................................................................8

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015)....................................................................................... 8-9

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................................7, 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008).................................................................................... 7-8

**Statutes**

15 U.S.C. § 78u-4(a)............................................................................................................*passim*

15 U.S.C. § 78j(b) ........................................................................................................1

15 U.S.C. § 78t(a) ........................................................................................................1

**Other**

17 C.F.R. § 240.10b-5 ...................................................................................................1

Fed. R. Civ. P. 23 ...................................................................................................*passim*

Lead Plaintiff movant Vito Vergerio ("Vergerio" or "Movant"), on behalf of himself and all others similarly situated (the "Class"), respectfully submits this memorandum of law in support of his motion to: (1) appoint Vergerio as Lead Plaintiff in the above-captioned securities class action; and (2) approve Vergerio's selection of Morris Kandinov LLP ("Morris Kandinov") and Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Co-Lead Counsel for the putative Class.[1]

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action brought on behalf of persons and entities that purchased or otherwise acquired shares of Smart Digital Group Limited ("SDM" or the "Company") between May 5, 2025, and September 26, 2025, at 9:34 AM EST, inclusive (the "Class Period") (the "Action"). The Action alleges violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) (the "PSLRA"), provides the court must appoint as lead plaintiff the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004). Vergerio is the most adequate Plaintiff because he timely moved to be Lead Plaintiff, has the largest, or materially equivalent, financial interest in the litigation ($3,121,748.00 in recoverable losses), and satisfies the representative requirements set forth in Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

---

[1] Defined terms have the same definitions as in the complaint filed in this Action on January 13, 2026 (the "Complaint"). ECF No. 1. Citations in the form "¶ __" refer to the Complaint.

For the reasons summarized herein and discussed more fully below, Vergerio respectfully requests the Court enter an order appointing Vergerio Lead Plaintiff for the Class and approving his selection of Morris Kandinov and Scott+Scott as Co-Lead Counsel for the Class.

## FACTUAL BACKGROUND

Plaintiff Parijaat Dixit filed this securities class action on January 13, 2026, against SDM, certain of its officers and directors, its auditor Enrome LLP, and its underwriter US Tiger Securities, Inc. SDM purports to conduct business operations in Singapore, Macau, and China through three operating entities that claim to provide a diverse array of services, including event planning, internet media services, and software customization and marketing services. ¶ 2. The Company completed its initial public offering ("IPO") on May 5, 2025. ¶ 23. The IPO generated $6,000,000.00 in gross proceeds by selling 1,500,000 ordinary shares at an offering price of $4.00 per share. *Id.*

This case arises from the collapse of SDM's stock price on September 26, 2025, and the still-pending halt of trading in the Company's securities due to a fraudulent market manipulation scheme. ¶ 4. That "pump-and-dump" scheme caused the Company's stock price to trade at over $29.00 per share in July 2025. ¶ 35. That price spike did not correlate with any fundamental news or corporate developments supporting a surge in the stock price. Rather, impersonators acting as financial advisors touted SDM in online forums, chat groups, and social media posts with baseless claims to create a buying frenzy among retail investors. ¶¶ 37-41.

On September 26, 2025, the Company's stock price collapsed 86.4% to close at $1.85 per share following an intraday halt by the NASDAQ Stock Market (the "NASDAQ") for volatility just minutes after the market opened. ¶¶ 5, 56-57. Before the next trading day began, the SEC suspended trading in SDM securities from September 29, 2025, through October 10, 2025, due to

"potential manipulation" in the Company's securities "effectuated through recommendations made to investors by unknown persons via social media to purchase the securities of SDM, which appear to be designed to artificially inflate the price and volume of the securities of SDM." ¶ 58. With the SEC suspension scheduled to expire, on October 11, 2025, NASDAQ suspended trading in SDM securities pending a request for additional information. ¶ 60. That suspension continues as of the date of this filing. ¶ 62.

Throughout the Class Period, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business, operations, and the true nature of the trading activity in the securities. ¶ 6. Specifically, Defendants failed to disclose to investors that: (1) SDM was the subject of a market manipulation and fraudulent promotion scheme involving social-media based misinformation and impersonators posing as financial professionals; (2) insiders and/or affiliates used and/or intended to use offshore or nominee accounts to facilitate the coordinated dumping of shares during a price inflation campaign; (3) SDM's public statements and risk disclosures omitted any mention of realized risk of fraudulent trading or market manipulation used to drive the Company's stock price; (4) as a result, SDM securities were at unique risk of a sustained suspension in trading by either or both of the SEC and NASDAQ; and (5) as a result of the foregoing, Defendants' positive statements about the Company's business, operations and prospects were materially misleading and/or lacked a reasonable basis. ¶¶ 30, 43, 55.

**ARGUMENT**

## I.    VERGERIO SHOULD BE APPOINTED LEAD PLAINTIFF

Vergerio should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest, or materially equivalent, financial interest in this litigation, and otherwise strongly satisfies the requirements of Rule 23.

3

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Vergerio satisfies all three of these criteria, is the most adequate representative of the Class, and should be appointed Lead Plaintiff.

### A.      Vergerio Filed a Timely Motion

On January 13, 2026, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Global Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against SDM and other defendants, and

advising investors in SDM securities that they had until March 16, 2026 to file a motion to be appointed as lead plaintiff. *See* Declaration of Andrew W. Robertson ("Robertson Decl."), Ex. A.

Vergerio has filed the instant motion pursuant to the Notice, and he has attached a sworn PSLRA Certification attesting he is willing to serve as a representative for the Class. *See* Robertson Decl., Ex. B. Accordingly, Vergerio satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B.      Vergerio Has the Largest, or Materially Equivalent, Financial Interest

"Courts in this District generally look at the following factors to determine financial interest: '(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . .; (3) the net funds expended during the class period . . .; and (4) the approximate losses suffered.'" *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)). Courts tend to treat the factors in ascending order of importance, with the number of shares purchased as the least important and the size of the loss the most important, but each factor is "only a proxy—and an imperfect one—for determining" which applicant for lead plaintiff has "the largest financial interest." *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011).

As evidenced by his PSLRA Certification, Vergerio purchased SDM securities during the Class Period and suffered losses as a result of Defendants' misconduct. *See* Robertson Decl., Exs. B & C. During the Class Period, Vergerio purchased 240,000 shares of SDM common stock, expending approximately $3,121,748.00. Vergerio did not sell any of the shares he purchased or engage in any profitable trades of SDM shares during the Class Period. As previously noted, the SEC suspended trading in SDM securities from September 29, 2025, through October 10, 2025,

and NASDAQ further suspended trading indefinitely on October 11, 2025, pending a request for additional information. As a result, Vergerio has not been able to liquidate his position, continues to hold all 240,000 shares, and has lost the entirety of his $3,121,748.00 investment. *See id.* Vergerio thus has a significant financial interest in this case.

To his knowledge, Vergerio's losses of $3,121,748 are materially identical to, if not the largest, among all members of the Class. While Plaintiff Dixit made significant purchases of SDM shares during the Class Period, he also made substantial sales—including *profitable* sales while the stock price remained inflated. *See* Dixit Schedule A, ECF 1, at 52. As a result, Plaintiff Dixit's approximate net losses are $3,130,230.01, representing a difference of $8,482.01, or 0.27%, relative to Vergerio's losses of $3,121,748.00. Thus, Vergerio and Dixit are virtually indistinguishable with respect to net losses. *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (holding that a 17% difference was "roughly equal"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (holding that where damage calculations differed by less than 2%, "[g]iven the probable margin of error involved in the damage estimates before the Court, [the two groups] have roughly equal damages"); *Police & Fire Ret. Sys. of Detroit v. SafeNet, Inc.*, 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (treating a "very slight difference" in losses of 2% as "roughly equal" and noting movants "claimed losses may be uncollectible or at least subject to unique defenses where in that [movant] may have sold most of its shares before [defendant company] announced corrective measures").

Other considerations weigh in favor of a finding that Vergerio has a greater financial interest than Dixit. Indeed, Plaintiff Dixit liquidated the *entirety* of his SDM position before the end of the Class Period, leaving him with net purchases of *zero*, versus Vergerio's net purchases of 240,000 shares. *Compare* Dixit Schedule A, ECF 1, at 52, *with* Robertson Decl. Ex. C.

Moreover, unlike Vergerio who faces losses on all of his shares, Dixit sold shares *at a profit* during the Class Period. *See City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, 2017 WL 6028213, at *2 (N.D. Ohio Dec. 5, 2017) (movant who suffered largest loss did not have largest financial interest because movant "sold out its position . . . during the class period" and thus "benefitted from the fraudulently inflated price of the stock while shareholders who hold on to their stock throughout the class period are left holding the bag when the fraud is revealed and the price of the stock drops").

### C.   Vergerio Satisfies the Requirements of Rule 23

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at (B)(iii)(I)(cc). Of the Rule 23 prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a motion to appoint Lead Plaintiff, the Court need only make findings as to the typicality and adequacy of the proposed Lead Plaintiff, and at this stage, those findings need only be "'preliminary.'" *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009). Vergerio makes this preliminary showing.

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (citation modified). Here, the claims asserted by Vergerio are typical of the claims of the other members of the putative Class because, like all other Class members, he: (a) purchased shares of SDM securities during the Class Period; (b) was adversely affected by Defendants' allegedly false and misleading statements and omissions; and (c) suffered damages as a result thereof. Since Vergerio's claims are based on the same legal theories and arise from the same event, practice, or course of conduct that gives rise to the claims of other Class members, typicality is satisfied. *See*

7

*Varghese*, 589 F. Supp. 2d at 397; *Taft v. Ackermans*, 2003 WL 402789, at *3 (S.D.N.Y. Feb. 20, 2003).

A plaintiff is an adequate class representative when he possesses common interests and an absence of conflict with fellow class members and the plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation. *See Tronox*, 262 F.R.D. at 343. Vergerio is adequate to serve as Class representative in that Vergerio, like all other members of the Class, suffered losses as a result of purchasing SDM securities at prices that were artificially inflated due to Defendants' alleged misstatements. Vergerio will, therefore, benefit from the same relief as other Class members.[2]

Finally, Vergerio has demonstrated that he is an adequate representative by retaining competent and experienced counsel. *See LaBranche*, 229 F.R.D. at 413 (considering qualifications of proposed lead counsel in evaluating adequacy); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (same). As shown below, Morris Kandinov and Scott+Scott are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Accordingly, Vergerio has made a *prima facie* showing that he satisfies all the requirements of Rule 23 for the purposes of this motion.

## II.  VERGERIO'S SELECTION OF CO-LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). In making this determination, a court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class[.]" *Id*. at (B)(iii)(II)(aa). "There is a strong presumption in favor of approving

---

[2] The fact that Vergerio never sold shares during the Class Period and continues to hold shares that are subject to the trading suspension also renders him both more typical and more adequate to represent the Class than Plaintiff Dixit.

a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015).

Vergerio has selected the law firms of Morris Kandinov and Scott+Scott to represent the Class. Morris Kandinov has a track record of successful service as class counsel in securities and investment-related litigation, placing it in the Top 25 of ISS CSAS's ranking of the Top Plaintiff Law Firms of 2024.[3] The firm currently serves as class counsel in other federal actions, including actions involving pump-and-dump scams similar to the one at issue here.[4] Scott+Scott has served as lead or co-lead counsel in many high-profile class actions and has recovered hundreds of millions of dollars for victims of corporate fraud.[5] Also, Scott+Scott currently serves as lead or co-

---

[3]     Recoveries by Morris Kandinov as lead or co-lead class counsel include: *J.B. and Margaret Blaugrund Foundation v. Guggenheim Funds Investment Advisors LLC*, No. 2021-1094 (Del. Ch.) ($18.8 million); *Funicular Funds, LP v. Concord Acquisition Corp.*, No. 2022-1173 (Del. Ch.) ($13.1 million); *Funicular Funds, LP v. Pioneer Merger Corp.*, No. 22-10986-JSR (S.D.N.Y.) ($13 million); *In re FAST Acquisition Cor. Stockholders Litig.*, No. 2022-0702 (Del. Ch.) ($12.5 million); and *ATG Fund II LLC v. VPC Impact Acquisition Holdings Sponsor II, LLC*, No. 23-1978-JSR (S.D.N.Y.) ($7 million). *See also* https://moka.law/wp-content/uploads/ISS-Top-Securities-Firms-2024.pdf.

[4]     *See, e.g.*, *Star Equity Fund, LP v. Firsthand Capital Management, Inc.*, No. 1:25-cv-0677-SAG (D. Md.); *Miley v. Hatteras Funds, LP*, No. 25-cv-672 (D. Del.); *Bouck v. Meta Platforms, Inc.*, No. 3:25-cv-5194 (N.D. Cal.); *Daigneau v. Meta Platforms, Inc.*, 3:25-cv-10180 (N.D. Cal.).

[5]     Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.*, HUD L 003492 1 (Hudson Cnty. N.J.)) ($102.5 million); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am.*, *N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys.*, *Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million).

lead counsel in numerous securities class actions pending in several U.S. District Courts.[6] Scott+Scott has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation.

In light of the foregoing, the Court should approve Vergerio's selection of Morris Kandinov and Scott+Scott as Co-Lead Counsel. The Court can be assured that by approving Vergerio's choice of Co-Lead Counsel, the putative Class will receive the highest caliber of representation. *See* Robertson Decl., Exs. D & E.

## CONCLUSION

For the foregoing reasons, Vergerio respectfully requests that the Court: (1) appoint Vergerio as Lead Plaintiff for the Class; and (2) approve his selection of Morris Kandinov and Scott+Scott as Co-Lead Counsel for the Class.

Dated: March 16, 2026

/s/ Andrew W. Robertson

**MORRIS KANDINOV LLP**
Aaron T. Morris
Andrew W. Robertson
William H. Spruance
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
andrew@moka.law
aaron@moka.law
william@moka.law

---

[6]   *See, e.g.*, Current Lead Counsel Appointments: *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 1:23-cv-01769 (S.D.N.Y.); *Tcherkezian v. Ibotta, Inc.*, No. 1:25-cv-01213 (D. Col.); *Jewik v. TransMedics Group, Inc.*, No. 1:25-cv-10385 (D. Mass.); *Giraudon v. Innovative Industrial Properties, Inc.*, No. 1:25-cv-00182 (D. Md.); *White v. Brooge Energy Limited*, No. 2:24-cv-00959 (C.D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 3:24-cv-08869 (N.D. Cal.); *Marselis v. Fox Factory Holding Corp.*, No. 1:24-cv-00747 (N.D. Ga.); *City of Southfield Fire & Police Retirement System v. Hayward Holdings, Inc.*, 2:23-cv-04146 (D.N.J.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.).

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
John T. Jasnoch  (*pro hac vice* forthcoming)
Mollie Chadwick  (*pro hac vice* forthcoming)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com
mchadwick@scott-scott.com

*Counsel for Lead Plaintiff Movant Vito Vergerio and*
*Proposed Co-Lead Counsel for the Class*

**GRADYLAW**
Tom Grady (*pro hac vice* forthcoming)
720 Fifth Avenue South, Suite 200
Naples, FL 34102
tgrady@gradylaw.com

*Additional Counsel for Lead Plaintiff Movant*

11

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies this Memorandum of Law complies with the word-count limitations permitted by Local Rule 7.1(c). The brief contains 3,227 words, excluding portions exempted by Local Rule 7.1(c), and uses a proportionally spaced, 12-point Times New Roman typeface in compliance with Local Rule 7.1(b)(1).

/s/ Andrew W. Robertson
Andrew W. Robertson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Andrew W. Robertson*
Andrew W. Robertson